McCALEB, Justice.
 

 Appellant and another were charged, tried and convicted of gambling as defined by R.S. 14:90 in that they conducted a lottery as a business. Following imposition of a sentence to serve 7 months in the Parish Prison and pay a fine of $500, appellant took this appeal, relying on eight bills of exceptions for a reversal of his conviction.
 

 
 *695
 
 Bill
 
 No.
 
 1, which was taken to the refusal of the judge to grant a continuance of the case on account of appellant’s illness, was the only exception stressed in oral argument. The other bills have been submitted for our consideration on brief.
 

 On May 6th 1955, the date of the trial, defense counsel appeared and moved for a continuance, advising the court that appellant had been confined in Touro Infirmary of New Orleans since May 4th on the order of his physician, Dr. Murrel H. Kaplan, who submitted a medical certificate reading as follows:
 

 “Mr. Lucius Forsyth has been a patient of ours for many years. He has been under treatment for diabetes and recurrent bronchitis. He reported to me on Wednesday, May 4th, complaining of severe headache, dizziness, and pains across his chest and shoulders. Blood pressure was 180/90.
 

 “Inasmuch as he is a known diabetic and his urinary sugar was four plus, and in view of the high blood pressure, it was deemed advisable to admit him to the hospital for observation and treatment”.
 

 As this certificate merely sets forth facts relative to a chronic diabetic condition for which appellant had been under treatment since 1948 and inasmuch as there was no statement contained therein that he was too ill to stand trial or assist his counsel during the trial, the district judge, suspecting that appellant was trifling with the court and believing that he had entered the hospital for the specific purpose of avoiding trial, issued an alias capias for his arrest and instructed the Sheriff to produce him in court instanter. When appellant was taken in custody at Touro Infirmary, Dr. Kaplan telephoned the judge and a conversation ensued relative to appellant’s condition, during the course of which the judge invited the physician to appear in court and testify. The latter declined to do so, stating that his certificate was complete. Before appellant was placed on trial, his counsel renewed the motion for a continuance on the ground that appellant was so ill that he was unable to assist in the defense of his case but no evidence was offered to support it other than the above quoted certificate. When the judge overruled the motion, defense counsel reserved this bill of exceptions.
 

 In his Per Curiam, the trial judge gives a detailed account of the facts and his reasons for refusing the continuance. He states, among other things, that, although appellant’s face seemed somewhat flushed and his eyes bright, as though he had been administered sedation, he was not in pain, was not weak or feverish and that he appeared completely oriented and alert; that, from time to time, he consulted with his counsel and at no time during the trial was any complaint made that he was incapable of assisting them; that the trial lasted a little over three hours and that appellant
 
 *697
 
 did not appear to be adversely affected physically by reason thereof.
 

 In a motion for a new trial, appellant set forth, inter alia, that he had been prejudiced by the refusal of a continuance as he was too ill to assist his counsel in their defense of his case. But the only evidence administered to substantiate these allegations was that of Dr. Kaplan who, while stating that it was his opinion that appellant should have remained in the hospital, would not say that he suffered any physical impairment by being forced to stand trial or that he was so ill as to be unable to assist in his defense.
 

 A review of the facts of the case satisfies us that the trial judge did not abuse his discretion in holding that appellant was physically able to stand trial. The granting or refusing of a continuance was a matter within the sound discretion of the judge and, as provided by Article 320 of the Code of Criminal Procedure, R.S. 15:320, unless it plainly appears that the judge acted arbitrarily and unreasonably, this court will not disturb his ruling. State v. Ward, 14 La.Ann. 673; State v. Blakeney, 164 La. 669, 114 So. 588; State v. Scruggs, 165 La. 842, 116 So. 206 and State v. Brown, 183 La. 445, 164 So. 241.
 

 Furthermore, a judgment will not be set aside and a new trial granted on appeal unless the error complained of constitutes a violation of a constitutional or statutory right or is prejudicial to the substantial rights of the accused. Article 557 of the Code of Criminal Procedure, R.S. 15:557. In the case at bar, it appears to us that appellant, suffering from a chronic disease, was approximately in the same condition on the day of trial that he was prior thereto and thereafter. As a matter of fact, appellant did not re-enter the hospital until May 11, 1955, five days after the trial. Dr. Kaplan stated that the delay in re-entry was due to the circumstance that no rooms were available at Touro Infirmary until May 11th. But the fact remains that, if hospitalization of appellant was essential to his well-being, he could have been confined elsewhere.
 

 While the police officer who had arrested Cauzbon (the codefendant on trial with appellant) on December 1, 1954 was testifying, he was asked by the State whether he had previously visited the room in which the arrest was made. Counsel for appellant thereupon objected on the ground that the evidence sought to be elicited was irrelevant and, when the objection was overruled, reserved Bill of Exceptions No. 2.
 

 There is no merit in the bill. The evidence was offered for the purpose of showing that Cauzbon had been seen in the same room where the lottery shop was operated prior to the date of his arrest on December 1, 1954 and to contradict a statement made by said Cauzbon at the time of his arrest that he happened to be at the lottery shop on the date of the raid for the purpose of collecting rent from the
 
 *699
 
 tenants. Furthermore, the testimony affected Cauzbon only and its admission was not prejudicial to appellant.
 

 The Bond Clerk of the Criminal District Court was called to the stand by the State and questioned with respect to a bail bond given by appellant’s codefendant, Cauzbon, on another criminal charge for gambling, separate and distinct from the one then being tried. Appellant’s counsel objected to this examination on the ground that the State was seeking to prove the commission of another offense by Cauzbon and thus was attacking his credibility without his ever having taken the witness stand. The judge overruled the objection and counsel reserved Bill of Exceptions No. 3.
 

 It is difficult to perceive how appellant was prejudiced by the admission of this evidence, which pertained solely to his co-defendant, Cauzbon. In addition, it is clear that the testimony was admissible as to Cauzbon for the limited purpose of showing the address he had given the authorities at the time of his arrest on another charge which, incidentally, was the same address (3739 S. Rocheblave Street) as that listed for Cauzbon in a special tax return filed by appellant under the Federal Wagering Tax Law as the operator of a gambling business.
 

 Counsel objected to the introduction in evidence of the lottery paraphernalia which were seized at the time of Cauzbon’s arrest, on the ground that no proof had yet been submitted to connect appellant with the law violation. The judge overruled the objection and counsel reserved Bill of Exceptions No. 4.
 

 There is no substance whatever in the bill. It is a fundamental rule of law that a party cannot be controlled in the order of introducing testimony. Article 368, Code of Criminal Procedure, R.S. 15:368; Section 583 of Vol. 2, Marr’s Criminal Jurisprudence of Louisiana, 2nd Ed. and cases cited to the text. The judge has a wide discretion in the matter and may permit the introduction of testimony at any stage of the proceeding even though at the time of its admission one of the defendants on trial may not then be shown to be connected with the crime.
 

 Bill No. 5 was taken to the overruling of an objection by defense counsel to the offer in evidence of certain quarterly reports submitted by appellant to the Division of Employment Security, Louisiana Department of Labor, produced from the Division’s files by a special investigator of the Department in response to a subpoena duces tecum. The basis,of the objection was that the investigator, Mr. Walter J. Blumstein, was not the custodian of the records and that they would have to be identified by the Administrator of the Division of Employment Security.
 

 We find no merit in the bill. Mr. Blumstein testified that the records produced in court were originals, stating that he had
 
 *701
 
 personally removed them from the Division’s files in the course of his duties. This was a sufficient predicate to warrant their admission in evidence.
 

 Bill of Exceptions No. 6 was reserved to the overruling of an objection to the admission in evidence of certain photostatic copies of appellant’s Federal Wagering Tax records and a certificate of the Chief of the United States Intelligence Division at New Orleans, stating that they were true and correct photostats of the originals filed in his office. Andrew Guirovich, a Special Investigator for the District Attorney’s office, testified that he obtained the photostats from the Chief of the United States Intelligence Division; that he had compared the copies with the original documents and found them identical and that he was present when Mr. Elliott, the Chief of the Division at New Orleans, signed the certificate as to the authenticity of the photostats. Defense counsel contended these documents could not be received unless Mr. Elliott was produced as his certificate was not sufficient to establish their identity or authorize their introduction as secondary evidence.
 

 Counsel are in error. The documents were certified copies of public records and the procedure for their certification is specifically authorized by Federal law, 26 U.S.C.A. § 6107. Article 457 of the Code of Criminal Procedure, R.S. 15:457, provides that a copy of a document certified by the officer having legal custody of the same is equivalent to the original in authenticity. In addition, the signature to the documents admitted in evidence was shown to be that of appellant and his tax consultant identified them as being copies of his returns.
 

 Bills of Exceptions Nos. 7 and 8 were taken to the overruling of motions for a new trial and in arrest of judgment. The points raised in the motions are simply a repetition of those presented in the other bills which we have already considered.
 

 The conviction and sentence are affirmed.
 

 FOURNET, C. J., absent.